# *Ex parte* Graves *et als.*

### *Petition for Mandamus.*

| 61 | 381 |
| 100 | 102 |

| 61 | 381 |
| 121 | 49 |

| 61 | 381 |
| 130 | 184 |

1. *Mandamus; when does not lie.*—Mandamus is not the proper remedy, to compel a court or magistrate to discharge a person, alleged to be improperly detained under process issued by such court or magistrate.

2. *Discharge; when prisoner not entitled to.*—When a demurrer is sustained to an indictment, or it is quashed or otherwise vacated, the discharge of the prisoner does not necessarily follow; but the court in the exercise of the authority which inheres in it, without the aid of statutes, may, if it deem it proper, hold the accused to answer a new indictment, without hearing testimony, or calling witnesses to show his guilt.

PETITION for *mandamus.*

Graves and others presented their petition for *habeas corpus* to the presiding judge of the City Court of Montgomery in term time, and during the February term, 1879, alleging that they were illegally restrained of their liberty by the sheriff of Montgomery county, without due process of law, &c.

The petitioners averred that " they were prosecuted before the grand jury of said county at the February term, 1879, and bills of indictment found against them, which were quashed by your honor at the same term; that they then moved the court to be discharged, which motion was overruled, and the court further ordering that they be held over

to await any indictment that might be preferred against them ·at a subsequent term of said court."

The judge endorsed on the petition the following refusal to grant the writ: "I refuse to grant the writ of *habeas corpus* in this case, because it is judicially known to me, that the grand jury at the spring term, 1879, of the City Court of Montgomery, found two indictments against these petitioners for burglary in railroad cars.   One of these indictments was demurred to, by said defendants at said term, after the grand jury was discharged.   The demurrer was sustained, and defendants, by order of the court in due form entered on the minutes of the court, by my order as judge of said court, were held over to answer a new indictment, and bond for their appearance fixed at $250 each.   The other indictment being lost or mislaid, the same order was made and entered upon the minutes of said court, all of which is a part of the records of said court, and in due form ; in default of said bonds, they were remanded to jail, and the sheriff authorized to take such bonds in vacation."

The records of the court showed that orders had been made in the case as stated in the endorsement of the judge refusing to grant the writ.

The petitioners duly excepted to the refusal to grant the writ, and now petition this court for *mandamus* to compel the court below, or the presiding judge, Hon. John A. Minnis, to discharge them.

G. W. TOWNSEND, for petitioners.—The only question in this case is, whether the court had authority under the statutes, or under its inherent power, to hold defendants to bail, after the indictment against them had been quashed, lost or destroyed.   The only statute laws bearing on the subject, are sections 4117, 4119 of the Code.   The first section referred to is as follows :

" If defendant will not consent to such amendment, the prosecution may be dismissed at any time before the jury retire, as to the count in the indictment to which the variance applies ; and the court may order another indictment preferred, at the same or a subsequent term in which case an entry of record must be made, to the effect following : ' The State v. A. B.   In this, it appeared from the evidence that there was a variance between the allegation of the indictment and the proof, in this (setting out the variance), or it appeared from the evidence that the defendant's name was ——— (stating it), and the defendant refusing to allow

the indictment to be amended, the prosecution *was dismissed* before the jury retired, and another indictment was ordered to be preferred.' "

In the very form of *entry* of the *order* of the court, is found the expression " *the prosecution was dismissed.*" If *dismissed*, there is no prosecution pending. If no prosecution be pending, the prisoner can not be *detained.*

" No person shall be accused, arrested, or *detained*, except in cases ascertained by law, and according to the *forms* which the same has prescribed.—§ 11, Bill of Rights.

Prisoners insist that they are " *detained* " not according to the " *form* " prescribed by these statutes, but against their spirit and letter.

If these enactments with their prescribed forms, mean anything, they mean that *by order of the court the prosecution has been dismissed, to be renewed upon a future contingency that may or may not happen, to-wit: the finding of " another indictment.*" In the interval, the prisoner is entitled to his freedom.

The law-giver never intended that a prisoner should suffer from the mistakes or ignorance of prosecuting attorneys in permitting fatal defects to creep into their indictments, nor from the carelessness of the officers in permitting the indictments to be lost, mislaid, or destroyed. The law means just what it says, that the prosecution should be " *dismissed,*" and the prisoner restored to his liberty—until the grand jury, in its sovereign discretion, might see fit to find " *another indictment.*" The moment this prosecution was dismissed, the hand of the law was withdrawn, and none other than trespassing hands can claim the prisoner's further detention.

It will be contended that the court had inherent power to hold on to the prisoners after the indictments were lost, mislaid, or destroyed, or quashed, until " another indictment " was preferred. We deny the proposition.

It was decided in *Gannaway v. The State*, 22 Ala. ——, that the courts had not inherent power to substitute an indictment which had been lost before arraignment and trial.

It was decided in the case of *Bradford v. The State*, 54 Ala., that the courts have no power to substitute indictments, when lost, mislaid, or destroyed before the defendant pleads.

If the courts have no inherent power to substitute a process by which the prisoner can be held and tried, then it necessarily follows that without such process the court had no inherent power to hold and try the prisoner.

Certainly, the holding and trying or either without process at all, would be doing greater violence to the rights of the defendants, than the substituting a lost process he had not plead to. It would require greater power to do the former than the latter; and as stated, it has been expressly decided the latter can not be done.

But we are told, that it has been the *practice* in the State always to hold the prisoner when indictments have been quashed, lost, mislaid or destroyed.

That may be, and yet a bad practice should never, and can never become good law. Especially a practice which involves the *liberty* of the citizen. It should never be invoked to bridge over the errors and carelessness of officers, and positive defects in the law.

In the strong and wholesome language of the Chief-Justice in the case of *Bradford v. The State:* "It is far better the accused should escape, whatever may be the degree of his guilt, than that the courts by mere decision should introduce new rules to cure a defect in the law the particular case develops."

In the absence of such law, the court has no power inherent, or otherwise, to commit, and without hearing evidence as it did in this case.

H. C. TOMPKINS, Attorney-General, *contra.*—The case of Gooden v. The State, 35 Ala. 430, is conclusive against the petitioners.

MANNING, J.—The argument for petitioners presents their case with skillful ingenuity. But we think *mandamus* is not the proper remedy, if they were entitled to any.

"The judges of the circuit courts within their respective circuits, and the judges of inferior courts within their respective jurisdictions," are "conservators of the peace." Const. art. 4, § 16, Code of 1876, p. 140. And here, as in England, judges who are entrusted with the conservation of the peace are authorized to issue warrants of arrest, or to commit persons already before them, when the occasion for the commitment judicially appears.—1 Hale's P. C. 578; 1 Bish. Crim. Pro. (Ed. of 1872) § 229. Nor is it necessary that there should be any such legislation as that suggested by counsel, to confer on the courts having jurisdiction of crimes, in which those judges preside, the authority they have as judges. Said MARSHALL, C. J., in the trial of Aaron Burr: "It is believed to be a correct position that the power to

[Ex parte Graves.]

commit for offenses of which it has cognizance, is exercised by every court of criminal jurisdiction, and that courts as well as individual magistrates are conservators of the peace. Were it otherwise, the consequence would only be, that it would become the duty of the judge to descend from the bench, and in his character as an individual magistrate, to do all that the court is asked to do."—Note to § 229, *supra.* But, in committing an accused person to jail, or in requiring bail for his appearance to answer to a charge of crime, the judge or the court doing so, acts judicially; and the correctness or not of the order or judgment rendered, can not be inquired into by the writ of *mandamus.* That is granted only when there is a clear legal right and no other adequate remedy. Ordinarily, in cases like the present, the investigation is had upon *habeas corpus.* The writ of *mandamus* is never issued to correct errors in, or to reverse the judicial action of a court. By that process "inferior courts or magistrates, when they fail or refuse to do so, will be compelled to entertain and exercise jurisdiction. They will not be controlled in the manner of its exercise, nor directed as to what judgment they shall render."—*Davidson v. Washburn,* 56 Ala. 597. The case of petitioners is, therefore, not a proper one for the writ of *mandamus.*

But the argument in their behalf is entitled to a further answer.

We can not assent to the proposition, that whenever a demurrer is sustained to an indictment, or it is quashed or otherwise vacated, the person against whom it was preferred is, in every such case, to be discharged. The presentment of a grand jury is always sufficient authority for the issue of a *capias* or warrant of arrest for the person accused, and for detaining him in custody, if not enlarged upon bail, to answer for the offense charged. The law, upon such a finding of the grand jury, makes it the duty of a court to hold him for trial upon the indictment. Now, if on account of an error in the name of a person mentioned in it—say of the owner of the railroad car alleged in this instance to have been burglariously entered, or for some other mere informality or defect not reaching the merits, the indictment be quashed or a *nol. pros.* entered,—must therefore, the court or judge, though knowing that nothing has been disclosed to show that the presentment of the grand jury is unfounded, yet discharge the persons accused and let them go free? This would be giving too much weight to that circumstance. When the indictment is quashed for a reason not touching the question

(25)

of their guilt or innocence, they can not be considered as
vindicated; nor is the effect of the presentment of the grand
jury so destroyed, that, looking both to the safety of the pub-
lic and the rights of individuals, it would be unjust to hold
persons so accused of crime, bound to appear to answer
another indictment therefor, free from the defects of the first.
This is implied, indeed, by the provision of the statute, that
the court may in such a case "order another indictment to
be preferred for the offense charged or intended to be
charged," either "at the same or a subsequent term." The
authority to refer the matter again to a grand jury, imports
that although the instrument quashed be vacated as an indict-
ment, it may be good as an affidavit or report of the grand
jury that the party accused had committed the offense with
which he is charged. By declaring the power in a court to
require inquisition by another grand jury, the statute recog-
nizes it as possessing the corresponding authority of holding
the supposed culprit to answer to their presentment.

If this were not so—if, as counsel contend, the accused
were entitled to be set at liberty upon the quashing of the
indictment for informality—this right would exist as well in
a case transferred for trial by a change of *venue* to a different
county from that in which the offense was committed and the
witnesses lived, as in the latter; so that by having an indict-
ment vacated at a time when witnesses could not be imme-
diately produced, counsel might get the worst criminals
turned loose to escape unpunished.

*Gooden v. The State*, 35 Ala. 430, arose out of such a case.
One Foley was tried and found guilty, in Talladega county,
of a crime committed in Randolph. But judgment was ar-
rested for defects in the indictment, and a *nol. pros.* entered.
Whereupon the court bound the accused by recognizance
with sureties for his appearance to answer another indictment,
to be preferred against him for the same offense, at the next
term of the Circuit Court of Randolph county. Foley hav-
ing failed thus to appear, his sureties, Gooden and others
against whom a judgment of forfeiture was taken, denied the
power of the court to exact the recognizance. It is true
there was a verdict against the accused of a petit jury, as
well as the presentment of a grand jury. But the former
was annulled as completely as the latter was. This court
upon an appeal to it said: "Independent of statute, the cir-
cuit courts possess the undoubted power, where the judgment
in a criminal cause is arrested and a *nolle prosequi* is entered
by the State, to bind the defendant over to appear at the

[Goetter, Weil & Co. v. Pickett.]

circuit court of the proper county to answer a new indictment for the same offense,"—page 433. We think these petitioners were not detained in a case not provided for by law.

The writ of *mandamus* is refused.